GEORGE CORNELIUS and CHRISTIAN D. EMSON, complainants, *v.* JOHN POST and SAMUEL REED, defendants.

1. The power of injunction committed to this court, is a delicate and a most important power, and should always be exercised with caution, to prevent, not to do mischief; to protect and sustain, not to render the enjoyment of rights and property uncertain; to put an end to, not to encourage litigation.

2. This court has the power, and will interpose, *not to stay a mere trespass,* which can be redressed at law, but to prevent the *destruction of the inheritance;* and it will do this though the title is in dispute, and even where the possession is in dispute, as is frequently the case as to extensive tracts of unimproved lands.

3. The case of West *v.* Walker commented on and approved.

4. Where the bill stated that in May last the defendants commenced cutting, and that the complainants "believe" that the defendants had threatened and intend to cut down and take away "very large quantities of the wood," &c., it was held that the extent of the injury done and threatened was not so stated that the court could judge whether the mischief was such as to require and justify its interference, and that the court would have dissolved an injunction, under such circumstances, without putting the defendant to the expense of an answer.

5. Where the title of both parties to a tract of unenclosed land in dispute—both claiming the title, and both the possession—had been spread upon the record, it was held that, while this court would not undertake to decide which title should prevail at law, there might be manifest propriety in declaring one of them of such a character as to render it unwise for this court to exert its extraordinary powers in prohibiting the exercise of acts of ownership under it.

6. So, where the defendants answered that those claiming under the adverse title had controverted, both at law and in equity, in various ways, the title of the defendants; that the dispute had been a fruitful source of lawsuits for fifteen years, and that the defendants have always maintained their title so far as was necessary for their success in any controversy, the defendants showed a title and possession under it, of such a character as would not justify the court in enjoining them from acts of ownership under it.

7. The rule as to the effect of new matter in an answer on a motion to dissolve, is that where the answer *admits the equity of the bill,* but sets up new matter for defence, on which, alone, the defendant relies for dissolution, the injunction will be continued to the hearing.

This cause was heard before the Chancellor at Trenton, July 3d, 1852, on motion to dissolve the injunction, which had been granted on an order of one of the masters.

The bill alleged that the complainants are now, and have been since the second day of July, 1849, the owners and possessors of an estate of inheritance in fee simple in a certain tract of land covered with pine wood, situate in the county of Monmouth, containing thirteen hundred and ninety-two acres and four hundredths of an acre of land. They claim title under and by virtue of a warrant from the Council of Proprietors of East New Jersey; and allege that the said tract is valuable chiefly on account of the wood and timber, and is unenclosed.

They complain that the defendant, under some pretended survey under the West Jersey Proprietors, in May last, entered upon the tract and commenced to cut down the timber and wood, preparatory to taking the same to market, and that they threaten and intend to cut down and take away large quantities of wood and timber growing on the said tract. The bill further states that the complainants have commenced an action of trespass against the defendants, and that they are informed and believe that the defendants are persons of but little property, and will be unable to respond in damages for the injury.

The defendants, in their answer, claimed title under the Council of Proprietors of West Jersey, and also by possession under that title, for more than forty years.

*Messrs. Stratton* and *Ten Eyck,* for motion, cited 1 *Johns. Ch. Rep.* 317, *Stevens* v. *Beekman; 4 Ib.* 21, *Storn* v. *Mann; 7 Ib.* 317, *Jerome* v. *Ross; 2 Green's Ch. Rep.* 279, *West* v. *Walker; 3 Ib.* 177, *Shreeve* v. *Black; 3 Ib.* 449, *Kerlin* v. *West.*

*Messrs. Vredenburgh* and *Vroom, contra.*

THE CHANCELLOR. The complainants obtained an injunction, on an order of one of the masters, restraining the defendants from cutting timber on a tract of land covered with pine wood, situate in the county of Monmouth, and containing thirteen hundred and ninety-two acres and four hun-

dredths of an acre of land. The complainants allege that they "are now, and have been since the second day of July, 1849, the owners and possessors of and in an absolute and indefeasible estate of inheritance in fee simple" in the said tract; that they claim title under and by virtue of a warrant from the Council of Proprietors of East New Jersey, to lay out and survey for Samuel C. Newell, Thomas De Bow and Francis W. Brinley, or the survivors of them, ten thousand acres in any part unappropriated in the county of Monmouth, dated the 20th May, 1835, under which was returned, on the 27th August, 1835, to said Newell, De Bow and Brinley, among other lands, the tract in question; that by sundry mesne conveyances under this location and survey, the complainants claim their title; that the said tract is wood-land, chiefly of pine, and that the soil being of very little value, the tract is valuable chiefly on account of the wood and timber, and is unenclosed.

The trespass complained of is, that the defendants, under some pretended survey under the West Jersey Proprietors, in May last, entered upon the tract and commenced to cut down and coal the timber and wood, preparatory to taking the same to market, and that they threaten and intend to cut down, coal and take away very large quantities of wood and timber growing on the said tract.

The bill states that the complainants have commenced an action of trespass against the defendants, and that they are informed and believe that the said defendants are persons of but little property, and will be unable to respond in damages for the injury.

That this court has the power to interfere and prevent the destruction of property, by stripping it of buildings, wood, or of anything else constituting its principal value, I have no doubt.

The conflict, in the numerous cases upon the subject, is not as to the right of the court to exercise its powers in cases of alleged trespass or waste, but the circumstances under which its jurisdiction should be exercised. The cases all agree that if the injury is irreparable, or if it amounts to a destruc-

tion of the principal value of the property, and the circumstances of the wrong-doer are such that he cannot respond for the injury he is committing, then the court ought to interfere, as a general rule, to prevent irreparable mischief.

The principles laid down by the Chancellor, in the case of *West* v. *Walker*, 2 *Green's Ch. Rep.* 280, do not, I think, conflict with this view as to the proper exercise of the restraining power of the court. The Chancellor approves and adheres to the general principle that the court cannot interfere in a naked trespass, where there is a full remedy at law, and that there must be something particular in the case, so as to bring it under the head of quieting possession, or to make out a case of irreparable mischief, or where the value of the inheritance is put in jeopardy. He decided that case, not on the ground, as was insisted by the counsel of the defendants in this case, that this court will not protect the extensive tracts of unenclosed pine wood-land from depredation and total destruction; for he expressly says, " I do not discover in it (the case) any of those peculiar circumstances which will justify me in taking it out of the general rule."

The court has the power, and will interpose, not to stay a mere trespass which can be redressed at law, but to prevent the destruction of the inheritance; and it will do this though the title is in dispute, and even where the *possession* is in dispute, as is frequently the case as to the extensive tracts of unimproved lands.

But every case must be judged by its own circumstances. The discretion of the Chancellor is appealed to. The power of injunction committed to this court is a delicate and a most important power, and should always be exercised with caution—to prevent, not to do mischief—to protect and sustain, not to render the enjoyment of rights and property uncertain—to put an end to, not to encourage litigation.

With the case before me I have no difficulty. The injunction ought not to have been granted. There is not a circumstance stated in the bill which takes it out of the case of an ordinary trespass.

How is the injury already committed, or threatened, charged in the bill?

It is alleged that, in May last, the defendants commenced cutting. What quantity have they cut? what injury have they done? And again: they threaten and intend, as the complainants *believe*, to cut down, coal, and take away *very large quantities* of the wood and timber. The complainants "believe" they have made these threats, not that such declarations were made by them to the complainant. And then those "threats" were to cut "very large quantities of the wood," not to strip the whole, or any large portion of the land, of the wood which constitutes its value. One hundred cords may, in the estimation of the complainants, be a very large quantity. But the extent of the injury done, and threatened, must be so stated that the court may judge whether the mischief is such as requires and justifies its interference.

I should have dissolved this injunction without any hesitation, upon an application for the purpose, without putting the defendants to the expense of an answer.

But the defendants have answered the bill, and I deem it proper to notice the answer for the reason that this same title to the tract of land in controversy has been before this court several times; and my view of the case, as the pleadings now before me present it, may prevent any further appeal to this tribunal.

The defendants, in their answer, claim title under the Council of Proprietors of West Jersey, and also by possession under that title for more than forty years.

From the mere fact of their setting up title in themselves and possession of the tract of land in dispute, I would not dissolve the injunction. In a tract of unenclosed land like this, both may claim the title, and both the possession, the possession being very equivocal and established by occasional acts of ownership only.

Nor would I undertake to decide in whom the legal title is. But where the title of both parties is before me—each

party undertaking to spread upon the record their respective titles—while I ought not to undertake to decide which title should prevail at law, there may be manifest propriety in my declaring one of them of such a character as to render it unwise for this court to exert its extraordinary powers in prohibiting the exercise of acts of ownership under it.

In this case, the title of the complainants is under the West Jersey Proprietors. The warrant was issued in 1835, and the survey and location made, part in 1835 and part in 1840. The complainants purchased in 1849. The location was made in a range of land which has been for many years a subject of dispute, and of numberless lawsuits in the courts of New Jersey. The validity of the title depends upon the question as to where is the true division line between East and West New Jersey.

The complainants, or those under whom they claim, it is not alleged have ever exercised any acts of ownership or possession in any way.

The defendants' title is under the West Jersey Proprietors. The survey and return were made to William Griffith, Esq., in 1809, and the land in question is included in this survey, known by the name of the Griffith survey. The complainants allege that Mr. Griffith, and those claiming under him, have, under this title, exercised acts of ownership over the land—have sold and cut off large quantities of timber; that under one of the owners upwards of five hundred acres were cut off, and that the title was not disputed until the location was made under the East Jersey Proprietors, in 1835. The defendants show that those claiming under this adverse title have controverted, both at law and in this court, in various ways, the title of the defendants; that this dispute has been a fruitful source of lawsuits for fifteen years, and that the defendants have always maintained their title, so far as was necessary for their success, in every controversy. It appears that abundant opportunity has been afforded, if not to these complainants, to those under whom they claim, of establishing their title at law.

I think the defendants show a title, and possession under

it, of such a character as will not justify the court in enjoining them from acts of ownership under it. ·

The defendants, by their answer, further show that, in 1835 and 1836, Cornelius, one of the complainants, cut a large quantity of wood and timber on the Griffith survey ; that he subsequently admitted that he had trespassed on the land of Samuel I. Reed, under whom the defendants held ; that an arbitration was had between the parties, not as to the title, but as to the amount of damages, which resulted in an award in favor of Reed, of upwards of six hundred dollars, and which sum Cornelius paid.

The complainants' counsel insisted that most of these facts constituted new matter, which should not be relied upon by the court on a motion to dissolve.

The rule as to the effect of new matter in an answer on a motion to dissolve is not as bad as stated by the counsel. The rule is that, when the answer *admits the equity of the bill*, but sets up new matter for defence, on which alone the defendant relies for dissolution, the injunction will be continued to the hearing.

But most, if not all, of the matters I have referred to in the answer in this case may, I think, be fairly considered as responsive to the bill. The bill charges that the defendants entered upon the land under a pretended survey from the West Jersey Proprietors. It was proper, then, that the defendants should set forth their title, and possession under it, and all the facts and circumstances going to show how that possession was asserted, maintained, and in what manner, if at all, recognized and acknowledged by the complainants. Let the injunction be dissolved, and the bill be dismissed with costs.

CITED *in Carlisle* v. *Cooper*, 6 *C. E. Gr.* 584.